UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LARRY PAYNE, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| VS. ) | No. 20-1042-JDT-cgc |
| ) | |
| T. HARRIS, ET AL., ) | |
| ) | |
|    Defendants. ) | |
| ) | |


ORDER TO MODIFY THE DOCKET,
DISMISSING COMPLAINT, AND GRANTING LEAVE TO AMEND

On February 18, 2020, Plaintiff Larry Payne, who at the time was an inmate at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee, filed a *pro se* civil complaint and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The next day, he submitted attachments to his complaint. (ECF No. 5.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On March 2, 2020, Payne notified the Court that he was no longer incarcerated and provided a new address. (ECF No. 7.) In response to an order directing him to do so, (ECF No. 10), Payne filed a non-prisoner *in forma pauperis* affidavit on March 16, 2020. (ECF No. 11.) On March 17, 2020, the Court granted Payne's motion for leave to proceed *in forma pauperis*. (ECF No. 12.)

Payne sues Correctional Officers T. Harris and D. Jones, Chief of Security S. Walton,[1] Gang Coordinator B. Howell, Chief of Unit Management C. Robinson, E. Grier of Internal Affairs, and Grievance Chairperson D.K. Jones.  (ECF No. 1 at PageID 9-11.)  He sues all Defendants in their individual and officer capacities.  (*Id*.)

Payne's complaint arises from two gang-related incidents on November 7, 2019, and November 12, 2019, involving threats and violence against him while at WCF, his demands for investigation of the matters and for placement in protective custody, and his grievances related to these events.  Payne specifically asserts claims against the Defendants for "deliberate indifference to [his] prison condition of confinement by failing to follow T.D.O.C. and CoreCivic/W.C.F.A.'s rules and regulations [regarding inmate entry into unassigned areas]."  (*Id*. at PageID 23.)  He further contends Defendants Walton, Howell, Robinson, and Grier failed in their "duty to protect [him] from violence at the hands of other prisoners" by refusing to place him in protective custody and also failed to investigate the November 7, 2019 assault; Payne alleges these failures resulted in the second assault against him.  (*Id.* at PageID 23-24.)  He also asserts a claim against Defendant D.K. Jones for not properly processing his grievances.  (*Id*. at PageID 24-25).

Payne seeks declaratory and injunctive relief, compensatory damages "jointly and severally against all named Defendants," and punitive damages.  (*Id*. at PageID 26-27.)

---

[1] This Defendant's last name is recorded on the docket as "Watson."  The Clerk is directed to MODIFY the docket to correct this to "Walton," as stated in the complaint. (ECF No. 1 at PageID 1, 10.)

2

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil

Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Payne filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

For the reasons explained below, Payne's complaint fails to state a claim for which relief may be granted.

As an initial matter, Payne's official capacity claims against the Defendants are treated as claims against CoreCivic, a private prison management company which operates the WCF.[2]  However, Payne also fails to state a claim against CoreCivic. "A private

---

[2] "Whiteville Correctional Facility (WCFA) is a time-building prison with a security designation of minimum to medium.  WCFA is managed by CoreCivic, a private corrections management firm." Www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html.

4

corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CoreCivic, Payne again must show that the alleged deprivation of his rights was due to a policy or custom of the company. *Id.* Payne, however, does not allege that his injuries are the result of an unconstitutional policy or custom of CoreCivic. He therefore fails to state a claim against the Defendants in their official capacities.

  Payne alleges that on November 7, 2019, Harris opened the HB-Pod door "without the presence of a floor officer" and allowed three inmates, "who were members of the Gangster Disciples," to enter the HB-Pod, where they physically attacked and verbally threatened Payne. (ECF No. 1 at PageID 13-14.) After the gang members left, Payne reported the event to Case Manager Fuller. Fuller, who is not named as a party, instructed him to "write a grievance against Harris" but did not "rectify the problem." (*Id.* at PageID 14.) After the November 7 assault, Payne also "went to medical to receive pain meds for injuries." (*Id.*) Nurse Craig, who also is not named as a party, "immediately notified

5

[Defendant] Walton that Payne is in fear for his life … and needs protective custody." (*Id*.) Walton told the Nurse to have Payne fill out an incident statement, which he did; Nurse Craig turned that statement in to Walton.

Payne next alleges that Case Manager Wilkes, who is not a party, was in the control booth on November 12, 2019, while Defendant D. Jones was on a break, when Wilkes "noticed I/M Kyle Fencl (a member of the Gangster Disciples), who was assigned to Unit GB-212 trying to enter Unit KC-Pod." (*Id*. at PageID 15.) Wilkes told Fencl to leave K-Unit and not to come back; Fencl left the K2 sally port but remained in the K-Unit hallway. (*Id.*) When Defendant D. Jones returned to the K2 control booth, Fencl returned to the K2 sally port and D. Jones opened the KC-Pod door and allowed Fencl to enter. (*Id*.) Fencl entered cell KC-108, verbally threatened Payne, and "hit Payne in the left temple area, knocking him unconscious." (*Id*. at PageID 16.)

Payne alleges he sustained multiple physical injuries from the November 12 assault, for which he was evaluated in the WCF medical department. (*Id*. at PageID 16.) The nurses told Captain Kellingsworth, the Shift Supervisor, of the situation. A doctor directed that Payne be taken to Memphis Regional One Hospital for x-rays and a CAT scan. (*Id*.) According to Payne, Kellingsworth notified various WCF personnel of the November 12 incident, including Defendants Grier, Walton, Robinson, and Howell. (*Id*. at PageID 16-17.) Payne explained to Grier and Howell about the November 7 and November 12 assaults and repeated his demand for protective custody. (*Id*. at PageID 17.)

On January 7, 2020, Payne saw a Gangster Disciples inmate who had participated in the November 7, 2019, assault again him "enter the restricted housing pod that only

6

housed P.C.I., P.C., and Close P.C. inmates." (*Id.* at PageID 20.)  On January 11, 2020, Payne saw his same assailant "feeding the P.C. inmates breakfast." (*Id.*)  However, the complaint does not allege any further injury to Payne following the November 12, 2019, assault.

Payne sues Defendants Harris, D. Jones, Walton, Howell, Robinson, and Grier for their deliberate indifference in failing to protect him from the attacks on November 7 and November 12.  He alleges that Harris and D. Jones allowed his attackers access to the pods where he was housed, in violation of TDOC policies; Walton, Howell, Robinson, and Grier allegedly failed to investigate the first assault and failed to place Payne in protective custody (PC) to prevent the second attack.  Defendant D.K. Jones allegedly violated Payne's constitutional rights by failing to properly process his grievances.  (*See* ECF No. 1 at PageID 23-25.)

*Failure to Follow TDOC Policies.*

Payne claims Defendants Harris and D. Jones failed to follow TDOC policies prohibiting inmates' entry into areas of the prison to which they are not assigned.  (ECF No. 1 at PageID 23-26.)  He purports to quote the policy upon which he bases his claim. (*Id.* at PageID 23 ("Inmates are not allowed to enter unassigned cells, housing units, etc., unless given prior approval by the unit manager [or] shift supervisor").)

An inmate's allegation that prison officials failed to follow TDOC administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  After *Sandin v. Conner*, 515 U.S. 472, 484 (1995), it is even clearer that mandatory language in prison regulations does not create a

7

liberty interest protected by the Due Process Clause. *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)). Section 1983 does not provide a remedy for violations of state laws or regulations. *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Accordingly, Payne does not have a constitutional right to the Defendants' observance of any particular TDOC policy with respect to inmates' facility area access. This claim does not afford a basis of relief to Payne.

  *Failure to Protect.*

  Payne's allegations of deliberate indifference arise under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth

Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297 & 302-03. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38. In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

Payne does not sufficiently state an Eighth Amendment claim against the Defendants for failure to protect him from assault. Assuming, without deciding, that he can establish the objective prong of such a claim, he fails to demonstrate the Eighth Amendment's subjective prong. He does not allege that Defendant Harris reasonably should have known the three inmates who were allowed into HB-Pod on November 7 intended to harm Payne—he alleges only that she violated TDOC Policy in opening the pod door without authorization. Likewise, Payne does not allege that Defendant D. Jones

9

should reasonably have known that inmate Fencl intended to attack Payne when he was allowed into KC-Pod on November 12. Again, he alleges only that she allowed Fencl to enter in violation of TDOC Policy. This is insufficient to state a claim of deliberate indifference for failure to protect Payne.

With regard to Defendants Walton, Howell, Grier, and Robinson, none of these Defendants are alleged to have had any knowledge or suspicion that the November 7 attack would occur. They learned of that first incident only after the fact. Payne's claims against these Defendants concern their alleged failure to investigate the first assault and failure to protect him from the second attack by not placing him into PC.[3]

Payne alleges that when Defendant Walton talked to him following the November 7 attack, he requested PC and reminded Walton there was an on-going problem at the WCF with inmates being in unassigned housing units and officers "allow[ing] them to go where they please especially the gang members." (ECF No. 1 at PageID 15, 22.) He allegedly told Walton that his attackers would be able to get to him in general population no matter where he was. (*Id.* at PageID 15.) Payne contends Walton nevertheless refused him PC and stated "you will be okay, I will have my staff keep a closer supervision on you." (*Id.*)[4]

---

[3] Payne never specifically alleges that Howell, Grier, and Robinson were informed of the request for PC that he made to Walton prior to the second attack occurred. That factual allegation is merely implied in his allegations that they failed to place him in PC.

[4] Payne alleges Walton made inappropriate comments to him when he requested placement in protective custody. (*See, e.g.*, ECF No. 1 at PageID 14-15 & 19 (alleging that Walton "impl[ied] Payne has to be a 'white dude' to be placed on P.C.").) However, harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard). Just as the Constitution "does not mandate comfortable prisons," *Wilson*,

With regard to Grier and Howell, Payne alleges that he spoke to them immediately after the *second* assault and asked if they had investigated the November 7 incident; they told him no, but they had been notified of the prior assault. (*Id.* at PageID 17.) Payne alleges that Defendants Grier, Howell, and Robinson, like Walton, also were aware of the general problems at the WCF concerning assaults and inmates being out of place. (*Id.* at PageID 24.)

Payne has not sufficiently alleged the subjective component of an Eighth Amendment claim for failure to protect him from harm. Though Defendant Walton did not place Payne in PC as requested, he listened to Payne's concerns and stated Payne would be kept on close supervision. Payne may not have liked that response, but his displeasure does not itself demonstrate any sufficiently culpable state of mind on Walton's part. And although Payne alleges that Grier and Howell told him they had been made aware of the November 7 incident but did not investigate it, there is no constitutional right to an investigation in such circumstances. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation"); and *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003).

---

501 U.S. at 298, it does not mandate polite prison guards or officials. "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Accordingly, Payne's allegation concerning inappropriate comments does not state a claim under § 1983.

Moreover, the allegation of a general, prison-wide problem regarding inmates being in unassigned areas is not enough to plausibly suggest that any Defendant knew there was a specific, excessive risk that other inmates would gain unauthorized access to Payne's housing units and attack him. The Supreme Court has repeatedly observed that prisons present an "ever-present potential for violent confrontation." *Whitley v. Albers,* 475 U.S. 312, 321 (1986) (quoting *Jones v. No. Car. Prisoner's Labor Union, Inc.,* 433 U.S. 119, 132 (1977)). *See also, Wolff v. McDonnell*, 418 U.S. 539, 561-62 (1974) (prisons are populated by violent offenders, causing unremitting tension among inmates and between inmates and guards).[5]

For these reasons, Payne fails to state a cognizable claim for failure to protect him from harm.

*Failure to Investigate and Inadequate Grievance Procedure.*

Payne alleges that: (a) the WCF had an inadequate prison grievance procedure with respect to the two incidents, which violated his First Amendment rights, (ECF No. 1 at PageID 24-25 (naming Defendant D. K. Jones)), and (b) Defendants Walton, Howell, Robinson, and Grier failed to investigate the two incidents. (*Id*. at PageID 23-24.) He states Grier and Howell told him, after the November 12 assault, that they had been aware of the November 7 attack but did not investigate it. (*Id*.) They told him they would look

---

[5] The fact that Payne may have feared future additional injury does not satisfy the objective component of an Eighth Amendment violation. *See Wilson v. Yaklich*, 148 F.3d at 601; *see also Taylor v. Tenn. Dep't of Corr.*, No. 2016 WL 419,4247, at *5 (W.D. Tenn. Aug. 8, 2016) (internal citations omitted).

into both incidents. (*Id*.) On November 26, 2019, Payne filed a grievance against Walton, Grier, Howell, and Robinson "for denying P.C. and neglecting to investigate the 11-7-19 incident." (*Id*.; *see also* ECF No. 5 at PageID 58-63.) On December 12, 2019, Payne filed a grievance against Walton "for implying Payne had to be a 'white dude' to be placed on P.C." (*Id*. at PageID 19.) On January 16, 2020, Payne inquired about the status of his November 26, 2019, and December 12, 2019, grievances. (*Id*. at PageID 20.) The grievance clerk denied ever receiving them. (*Id*.) On January 19, 2020, Payne submitted letters to "T.D.O.C. Mr. Hill and Grievance Chairperson Jones about violation of [my] First Amendment right by [the grievance clerk]." (*Id*.) On January 24, 2020, Payne filed a grievance against the clerk "for violating the grievance policy and procedures." (*Id*. at PageID 20-21; *see id*. at PageID 22.) Payne's grievance- and investigation-based claims are unavailing.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure."). Even if a grievance system was constitutionally guaranteed, Payne has not shown how any particular Defendant's conduct with respect to the grievance process directly affected his "ability to bring his claim before any court." *See Coleman v. Governor of Mich.*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted). Prisoners have a First Amendment right to file a grievance against prison officials, but they have no similar right

to an investigation of their allegations. *See Carlton*, 76 F. App'x at 644. Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). Payne's contentions regarding his grievances fail to state a claim for relief.

### *Opportunity to Amend.*

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that Payne should be given the opportunity to amend his complaint.

However, because Payne is no longer at the WCF, his requests for declaratory and injunctive relief against the WCF and its employees is moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (complaint for declaratory or injunctive relief is rendered

moot by the plaintiff's transfer to a different prison facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). If he files an amended complaint, he may seek only damages.

In conclusion, the Court DISMISSES Payne's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED.

Any amended complaint must be filed within twenty-one days after the date of this order, on or before **October 27, 2020**. Payne is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Payne fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                                       s/ **James D. Todd**
                                                      JAMES D. TODD
                                                      UNITED STATES DISTRICT JUDGE